UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT DURR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:06-CV-765 CAN |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On November 13, 2006, Plaintiff Robert Durr (Durr) filed his complaint in this Court. On March 18, 2007, Durr filed an opening brief, in which he asks this Court to enter judgment in his favor or to remand this matter to the Commissioner. On June 7, 2007, Defendant Social Security Administration (SSA) filed its response brief. On June 24, 2007, Durr filed his reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On January 31, 2003, Durr filed his application for Disability Insurance Benefits (Tr. 57). Durr claims he is entitled to benefits pursuant to Titles II and XVI of the Social Security Act. See 42 U.S.C. §§ 416(i), 423. On July 14, 2005, Durr appeared at a hearing before an Administrative Law Judge (ALJ) (Tr. 323). The ALJ found that Durr had severe impairments of chronic obstructive pulmonary disease (COPD), a back condition with low back pain, and personality disorder (Tr. 24). The ALJ found that Durr had the residual functional capacity

(RFC) to perform the full range of unskilled light work with some limitations (Tr. 26).[1]  Based on Durr's age, education, work experience, and RFC, the ALJ found that a significant number of jobs within the national economy existed that Durr could perform (Tr. 30).  Therefore, the ALJ found that Durr was not disabled (Tr. 31).

Durr appealed the ALJ's decision to the Appeals Council (Tr. 7-12).  On September 6, 2006, the Appeals Council denied Durr's request for review, and as a result, the ALJ's decision became the Commissioner's final decision (Id.).  20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).  Consequently, Durr filed a complaint in this Court seeking a review of the ALJ's decision.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II.  ANALYSIS

### A.  Facts

At the time of the ALJ's decision, Durr was a 51 year old man with a high school level education (Tr. 324, 326).  Durr had also completed some post-high school business administration courses (Tr. 326).  Durr has had several jobs over time.  He was a blast furnace helper for U.S. Steel where he handled iron castings (Tr. 26).  He also worked in a trailer factory on the production lines (Id.).  Most recently, he held a supervisor position for Faith Mission kitchen (Id.).  Durr claims that he has both physical and psychological limitations that prevent him from performing any of his past work or any other work in the economy (Tr. 26-27).

---

[1] "Light work" involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds and/or standing and walking for about six (6) hours during an eight (8) hour work day more than occasional conversations with co-workers, supervisors, or the public.  20 C.F.R. § 404.1567(b); SSR 83-10 at 6.

Durr alleges that he suffers from manic depression, fatigue, COPD, back pain, and personality disorder (Tr. 24, 48, 65). Durr claims that his back problems cause constant and nagging pain and that his mental problems prevent him from facing people (Tr. 334). Also, he is unable to move for up to a week at a time because of his depression (Tr. 336-338). Durr claims he also hear voices in his head even though he is on the medication Lexapro (Tr. 339-40). Based on these problems, Durr claims he cannot work. In terms of activities, Durr claims he is able to do small chores around the house and some shopping (Tr. 346). But on his really bad days, he can do nothing more than lay around and watch TV (Tr. 347). Durr has seen several doctors.

1. Dr. Salvador Ceniceros, M.D. (Dr. Ceniceros)

Durr has been seeing Dr. Ceniceros since at least 2003 (Tr. 286-87). On February 23, 2004, Dr. Ceniceros reported that Durr was not doing well (Tr. 284). Dr. Ceniceros reported that Durr was glum, unhappy, depressed, but fully communicative (Id.). Dr. Ceniceros diagnosed him with major depressive disorder (Id.). On May 14, 2004, Dr. Ceniceros saw Durr again, but little had changed (Tr. 282-83). On June 18, 2004, through June 2, 2005, Dr. Ceniceros saw Durr a number of times (Tr. 270-82). While Dr. Ceniceros did not change his diagnosis of Durr, he represented that Durr was improving and looked happier and healthier (Id.). For example, Dr. Ceniceros even noted that there were no signs of depression at one point (Tr. 270). On May 6, 2005, Dr. Ceniceros submitted a letter where in his opinion Durr could not work due to a combination of his anxiety and depression (Tr. 231).

2. Douglas A. Devens, M.D. (Dr. Devens)

Dr. Devens is Durr's family physician who treated Durr for both physical and mental problems (Tr. 28, 241-44). Dr. Devens' treatment notes are generally not clear or legible, but he

3

has treated Durr since 2002 (Tr. 148).  Dr. Devens opined that Durr is unable to be on his feet for four hours per day on a regular basis (Tr. 241).  He expected no future improvement in Durr's condition (Tr. 243).  Dr. Devens also found that Durr suffered from depression, and it affected his ability to perform labor (Tr. 251-53).

        3.      Other Physicians

There are a variety of other doctors with which Durr met.  Durr saw John M. Grahm, D.O. (Dr. Grahm), an orthopedic specialist, once around May 24, 2005 (Tr. 255).  Dr. Grahm found Durr had degenerative changes in his lumbar spine and mild to moderate degenerative changes in his bilateral hips, but Dr. Grahm sent Durr to physical therapy  (Id.).  Durr saw Gary M. Lam M.D. (Dr. Lam) who ran several tests on Durr, diagnosed Durr with degenerative disc disease, but he recommended that he do home exercises (292-305).  Durr also saw a number of consulting State Agency physicians.

The major issues this Court must resolve are: whether the ALJ properly decided not to award the opinions of Durr's treating physicians controlling weight, whether the ALJ properly assessed Durr's credibility, and whether the ALJ properly denied considering disability findings by other agencies.

    B.    Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales,

402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

      C.      Durr's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Durr must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's RFC leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged

by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Id.

The ALJ found that Durr's RFC allowed him to perform other work that existed in significant numbers in the national economy at step five.  As a result, he was not disabled.  Durr asserts several arguments attacking the ALJ's assessment.

> 1. The ALJ's determinations that the opinions of Durr's treating physicians were not controlling is supported by substantial evidence.

Durr contends that the ALJ erred by not assigning more evidentiary weight to the opinions of his treating physicians.  An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.  Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006).  "This rule . . . seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either." Id.  More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances.  20 C.F.R. § 404.1527(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000).  However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled.  Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001).   Medical evidence may be discounted if it is internally inconsistent or

inconsistent with other evidence in the record.  Clifford, 227 F.3d at 870.  However, the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record.  20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870; Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996).  When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh.  Hofslien, 439 F.3d.at 377.  Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances.  Id.

          a.       Dr. Ceniceros

The ALJ did not give Dr. Ceniceros controlling weight.  The ALJ found that even though Dr. Ceniceros' treatment records reflected a period of Durr suffering from moderate depression, hallucinations, and signs of psychotic process in 2004, the records after that reflected a resolution of these symptoms (Tr. 29).  The ALJ also found that Dr. Ceniceros' treatment notes indicated Durr was otherwise functioning normally (Id.).  Based on these inconsistencies, the ALJ did not award Dr. Ceniceros controlling weight by agreeing with his finding that Durr could not work (Id.).  Instead, the ALJ found that Durr was limited to unskilled, simple, routine, repetitive tasks (Id.).  Also, the ALJ found that Durr could not engage in interpersonal interaction more than a third of a work day (Id.).

First, Durr argues that the ALJ erred because he gave no weight to Dr. Ceniceros' opinion.  The ALJ states,

> [a]s Dr. Ceniceros is making a conclusion regarding the claimant's ability to work, which is an issue reserved for the Commissioner of Social Security, weight is not given this opinion pursuant to Social Security Ruling 96-5p (Tr. 29).

7

The ALJ then continues to discuss Dr. Ceniceros' treatment records. After discussing those records, the ALJ finds that Durr is limited in his ability to converse with others. Contrary to Durr's contention, the ALJ considered and gave some weight to the opinion of Dr. Ceniceros. Where the ALJ disagreed with Dr. Ceniceros is his ultimate conclusion, which the ALJ is entitled to do. See 20 C.F.R. § 404.1520(e)(1); Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) (indicating that a claimant is not entitled to benefits simply because a physician states a claimant is "disabled"). In this regard the ALJ committed no error.

Durr argues the ALJ failed to assign Dr. Ceniceros controlling weight. This Court finds the ALJ's decision not to award Dr. Ceniceros controlling weight was reasonable. Even though Dr. Ceniceros found that Durr was completely disabled, the ALJ did not accept this conclusion. The ALJ highlighted Dr. Ceniceros' own treatment notes, and the ALJ explained how even though Dr. Ceniceros' notes reflected a period when Durr was suffering from mental problems, his later notes indicated that these problems resolved (Tr. 29). Medical evidence may be discounted if it is internally inconsistent. Clifford, 227 F.3d at 870. The ALJ found that Dr. Ceniceros' findings were internally inconsistent, and he accurately pointed to evidence in the record to explain and support this conclusion. Consequently, this Court finds the ALJ's reasoning was reasonable.

      b.  Dr. Devons

With regards to Dr. Devons, the ALJ made the following statement:

> The opinion of the claimant's family physician, Dr. Douglas Devons, as to the claimant's physical limitations, is given less weight than to findings made during a State Agency consultative examination, an examination by an orthopedic specialist, and to the determination of State Agency physicians; particularly given that Dr. Devons medical treatment records reflect scant almost non-existent related findings,

and his opinion instead appears to be based solely on the claimant's subjective allegations (Tr. 28).

Durr argues that Dr. Devons' found Durr could not work because of his depression.[2] Durr argues that if the ALJ could not determine the basis for Dr. Devons' opinion, the ALJ should have at least attempted to contact Dr. Devons before determining that his opinion was not entitled to controlling weight. This Court disagrees.

Generally, an ALJ has the duty to develop a full and fair record. Thompson v. Sullivan, 933 F.2d 581, 587 (7th Cir. 1991). In Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000) the 7th Circuit indicated that an ALJ is required to supplement the record, such as contacting a treating physician, if an ALJ is unable to make a decision due to a lack of information. Id. Still, the 7th Circuit has stated that no record is technically "complete" and that district courts should respect an ALJ's decision that a record is "complete." See Kendrick v. Shalala, 998 F.2d 455, 457-58 (7th Cir. 1993). In Skinner v. Astrue, 478 F.3d 836, 844 (7th Cir. 2007), the 7th Circuit found that when there is adequate information in the record for the ALJ to render a decision, the ALJ's decision not to contact the treating physician does not render the record incomplete. See also Howard v. Barnhart, 2003 WL 21697375 at 7 (N.D. Ill. 2003).

Upon examination of the record, the only opinion this Court can find by Dr. Devons is that Durr was limited to standing no more than four hours per day and that he was significantly limited in his ability to lift, grasp, push, pull, or bend (Tr. 241, 254). The ALJ indicates that Dr.

---

[2]This Court notes that the ALJ addressed Dr. Devons' opinion with regards to Durr's physical limitations. The record does not clearly reveal whether Dr. Devons diagnosed Durr with his limitations solely because of his depression, but Dr. Devons found Durr was physically limited either because of depression or other physical problems (Tr. 250-54). This Court is only concerned with the fact that the ALJ found Dr. Devons opinions that Durr was physically limited were not entitled to controlling weight, regardless of the cause (Tr. 28).

9

Devons is not entitled to controlling weight based on scant findings, which suggests a lack of information to support Dr. Devons' opinion.  However, there was a sufficient amount of evidence in the record for the ALJ to render a decision without contacting Dr. Devons to clarify this opinion.  A State Agency physician found that Durr was only mildly limited in his motions and ability to ambulate (Tr. 160-62).  Dr. Grahm indicated that Durr was in pain, but that Durr was recommended to physical therapy rather than recommending that Durr engage in no physical activity (Tr. 255).  Dr. Grahm did not indicate that Durr was limited physically (Id.).   Dr. Lam found that Durr had degenerative disk disease, but he found no focal dorsal foot ganglion compression with slight bilateral neural narrowing (Tr. 295).  The medical report and objective testing from Dr. Lam do not indicate any type of physically disabling symptoms of Durr's mobility or ambulatory ability (Tr. 292-305).  A consulting physician, Patrick W. Utz, Ph.D., questioned Durr's depression due to his excessive anger and mentioned nothing about physical limitations (Tr. 197).  Most importantly, the ALJ specifically pointed to this evidence in the record in making his decision, which confirms with this Court that the ALJ utilized this evidence in reaching his decision (Tr. 27-28).  Accordingly, the record contained adequate information.  The ALJ's decision not to contact Dr. Devons to clarify his opinions did not render the record incomplete.  Skinner, 478 F.3d at 844.  The ALJ's conclusion to not award Dr. Devons controlling weight is supported by substantial evidence.

In summary, the ALJ properly found that Dr. Ceniceros' opinion was internally inconsistent.  Also, the ALJ's decision not to contact Dr. Devons was not a failure to fully develop the record.  The ALJ's decisions regarding Durr's treating physicians were supported by substantial evidence.

10

      2.      <u>The ALJ's determination of Durr's credibility was supported by substantial evidence</u>.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. <u>Golembiewski</u>, 322 F.3d at 915; <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. <u>Golembiewski</u>, 322 F.3d at 915. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. <u>Clifford</u>, 227 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004) (quoting <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995)).

The ALJ found Durr's testimony to be inconsistent (Tr. 27). Durr stated that he cared for his spouse, who had congestive heart failure, but Durr also stated that his spouse grocery shops alone and does most of the housework. The ALJ did not find these statements to be consistent for two reasons: 1) the ALJ did not feel a person with congestive heart failure, such as Durr's

11

spouse, could do so much activity and 2) the ALJ found Durr had contradicted himself because Durr stated that he took care of his wife and then he also stated that she did "most" of the house chores and grocery shopping (Id.). Also, the ALJ found that Durr's complaints of side effects from medications were not reported in the medical records (Id.). For these reasons, the ALJ found that Durr was not entirely credible.

This Court finds the ALJ's credibility determination was reasonable. While the ALJ based part of his credibility finding on inconsistencies with medical evidence, his keystone finding was that Durr's testimony was internally inconsistent and simply not reliable. The ALJ is only required to provide specific reasons for his credibility finding. The ALJ provided such reasons by stating Durr's testimony was inconsistent and by explaining how it was inconsistent. The ALJ's finding is not an objective one to which this Court is allowed more freedom to review. Rather, this determination is exactly the kind of subjective credibility determination to which this Court grants the ALJ extreme deference. See Jens 347 F.3d at 213.

Durr takes issue with the ALJ's finding that it is inconsistent for a person with congestive heart failure to be able to perform house chores and other tasks. If it was clear that a person with congestive heart failure is able to do tasks like common house chores and if that was the ALJ's sole finding, this Court might find that the ALJ's credibility determination was not reasonable. However, that is not the case here. First, it is debatable whether a person with congestive heart failure can in fact perform tasks as Durr indicated. By no means is there a clear answer one way or the other to this question. As a result, this Court cannot say the ALJ's finding was patently wrong. Furthermore, the ALJ pointed to another reason for his finding, which was the fact that Durr's testimony was contradictory in that he took care of his wife yet she did most of the

12

housework and grocery shopping. Testimony, by its very nature, is part of the evidence. The evaluation and weighing of evidence is a question of fact that is for the ALJ to decide. Haynes, 416 F.3d at 626 (indicating this Court is not to re-weigh facts). The ALJ provided a reason for his finding, and it was not patently wrong or unreasonable. Therefore, this Court finds that the ALJ's credibility determination was supported by substantial evidence.

> 3. The ALJ's decision not to consider the Medicaid finding was supported by substantial evidence.

At the hearing, Durr indicated that he was on Medicaid (Tr. 348). However, there are no Medicaid records in the administrative record that indicate Durr was on Medicaid. Still, Durr claims the ALJ committed an error because he did not discuss or consider Medicaid's finding that Durr was disabled.

An ALJ is not bound by findings made by another agency concerning whether a claimant is disabled. See Clifford, 227 F.3d at 874. Therefore, an ALJ may consider the disability findings of other agencies, but an ALJ is not required to consider such evidence. Id. Furthermore, this Court notes there is nothing in the record other than a passing statement by Durr at the hearing that he was on Medicaid. He does not indicate that he was on Medicaid because of disability. Thus, the record does not even clearly establish that Durr was on Medicaid because an agency found him disabled. For these reasons, the ALJ did not err by failing to discuss or consider any finding by another agency regarding Medicaid.

> 4. The ALJ's remaining findings were supported by substantial evidence.

Durr makes several other arguments challenging other aspects of the ALJ's decision. First, Durr argues that the ALJ opinion is inconsistent. Specifically, Durr challenges that the

ALJ's finding that Durr cannot endure "prolonged" standing is inconsistent with a finding that Durr could do "light work." "Light work" requires a claimant to be able to stand/walk for up to six hours in a work day, and Durr claims the ALJ's statement that Durr could not stand/walk for a "prolonged" time is inconsistent with this finding. Durr points to no statute, regulation, or SSR ruling to define the word "prolonged." Therefore, Durr's argument is simply nothing more than a semantic argument. This Court cannot say the ALJ's opinion is unreasonable based on such an argument. Absent any authority that defines "prolonged," this Court finds the ALJ's use of the word "prolonged" and his finding that Durr could perform "light work" is consistent and reasonable.

Next, Durr argues that the ALJ failed to address the possibility of a closed period of disability. This Court is not aware of any authority, and Durr points to none, that requires an ALJ to consider a closed period of disability. Consequently, this Court can only say the ALJ's decision not to consider a closed period of disability was supported by substantial evidence.

Finally, Durr argues that the ALJ improperly found him not disabled on a date after the hearing. The date of Durr's hearing was July 14, 2005, yet the ALJ's decision was not issued until February 7, 2006. Durr argues that because the ALJ had no evidence from July 14, 2005, to February 7, 2006, the ALJ could not find him disabled from that time period. However, Durr does not dispute that he submitted no additional evidence to the ALJ during that time period. Also, Durr points to no statutes, regulations, or case law, and this Court is also aware of none, that states an ALJ can only make his decision up to the point of which he has evidence. Therefore, the ALJ simply assigned weight to the lack of additional evidence during that time period to find Durr was not disabled. This Court will not re-weigh the evidence. Therefore, this

14

Court finds that the ALJ's decision to find Durr not disabled up till February 7, 2006, was supported by substantial evidence.

### III.     CONCLUSION

The ALJ's determination that Durr's physicians were not entitled to controlling weight was supported by substantial evidence.  Further, the ALJ's analysis of the claimant's credibility was supported by substantial evidence.  As a result, Durr's request for remand or summary judgment is **DENIED** [Doc. No. 17].  Judgment shall be entered in favor of the Social Security Administration affirming the Commissioner's decision pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The Clerk is instructed to terminate this case.

**SO ORDERED.**

Dated this l9th Day of September, 2007.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge